# IN THE COURT OF APPEALS OF IOWA

No. 21-0383
Filed June 16, 2021

**IN THE INTEREST OF S.F.,**
**Minor Child,**

**C.F., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, David F. Staudt,

Judge.


        The mother appeals the termination of her parental rights.  **AFFIRMED.**


        Joseph G. Martin, Cedar Falls, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, attorney and

guardian ad litem for minor child.



        Considered by Vaitheswaran, P.J., Tabor, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**POTTERFIELD, Senior Judge.**

The mother appeals the termination of her parental rights to S.F.,[1] born in 2015.[2]  The juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(f) (2020).  On appeal, the mother contends the statutory ground for termination was not proved or, alternatively, the court should have delayed permanency to give her additional time to work toward reunification.  Additionally, she maintains it is not in the child's best interests to terminate her rights because of their close bond.  Our review of termination proceedings is de novo.  *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021).

The juvenile court may terminate a parent's rights under paragraph (f) of section 232.116(1) when the State proves the following by clear and convincing evidence:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother challenges only the fourth element—whether S.F. could be returned to her care at the time of the termination hearing.  *See id.* at 294 (considering whether the child could be returned to parent's custody at the time of the termination hearing).

---

[1] The mother's two older children were also involved in child-welfare proceedings, but they both reached the age of majority before the termination hearing.
[2] The father of S.F. is deceased.

The mother claims S.F. could be returned to her care because the issues that led to the involvement of the Iowa Department of Human Services (DHS) with the family were "substantially resolved" by the time of the January 2021 termination hearing. We disagree. We recognize the mother obtained full-time employment and is now maintaining her own residence. These are significant steps, and we do not disregard them. But the main reason for DHS's involvement and the reason S.F. was removed from the mother's care in February 2019 was due to the mother's use of methamphetamine and the fact that both the mother and then-three-year-old S.F. tested positive for the drug. While the mother last used methamphetamine in May or November 2019—depending on which narrative of the mother's you credit—she has not overcome her serious issues with addiction. Beginning in May 2020, the mother began consistently testing positive for opioids—usually oxycodone. Between May 6 and October 8, 2020, the mother tested positive for the unauthorized use of the prescription drug nine times.[3]

The termination hearing was scheduled to begin on July 17, 2020, but the State asked the court to continue the hearing for three months. In making that request, the State noted it was hoping to give the mother extra time and there would be "no missed drug test, no test positive for hydrocodone. No test dilute. . . . Negative tests. All the way around and no missed tests." The court granted the motion to continue, telling the mother, "You know, the drugs are a very serious problem. I think you need to redouble your efforts to get away from them."

---

[3] The mother tested positive three times in May, twice in July, twice in August, once in September, and once in October.

The first day of the termination hearing took place on October 23, 2020. The State questioned the mother's continued positive tests for oxycodone following the July continuance. The mother responded she was taking pills from an old prescription for a pain she was experiencing in her mouth and that a doctor told her she could do so. The court expressed disbelief at the mother's explanation, and we agree with the juvenile court. The mother's story about having fifteen leftover pain pills from March 2019, which led her to repeatedly test positive for opioids over a six-month period from May to October 2020, is not credible. The mother testified she had used the last two pills the month before and therefore she would no longer be testing positive for the substance. The court continued the termination hearing for three months, reminding the mother she had no more reason to test positive for any substances and this was a chance to prove her sobriety to everyone involved.

Then, at the second day of the hearing on January 27, 2021, the State introduced into evidence that the mother had failed to show for two of her drug tests[4] since the last hearing—once in November and once in December—and had tested positive for oxycodone on January 3, 2021.[5] The mother was unable to

---

[4] We do not include the tests the mother missed because she either had a scheduled visit or was working during the testing window. The social worker mentioned a third test that she considered a no-show because it was technically feasible for the mother to make it to the testing center after work and the mother did not alert the worker about difficulty with testing at the time, but we have also not included that instance in the missed tests.

[5] "No shows" and issues with testing have been a common problem in this case. At the October hearing, the social worker testified the mother had been asked to test eighty-nine times and had attended only forty-two. Of those forty-two, twelve were positive for drugs; fifteen were negative; and fifteen were invalid due to concerns with tampering, the mother reporting she could not provide a sample, or her refusal to test after learning what type was requested.

explain the positive test in January. Additionally, at a visit on January 6, the service provider supervising a visit in the mother's home found a man in the basement bedroom. No one else was supposed to be present during the visits, and the mother claimed the man was just on his way out. The service provider noticed an open pill bottle next to the man and asked about it; the man said it was empty. When the service provider looked, it was not empty. The man then said it was his and for his sinuses, but the name on the bottle did not match the man's name (or the mother's) and he then said it belonged to his nephew. At that point, the service provider ended the visit.[6]

The mother downplays the significance of her apparent addiction to opioids. She argues that "at worst, [she] has only occasionally abused prescription drugs" and "[t]he same risk factors associated with methamphetamine use are simply not present with intermittent . . . prescription drug abuse." First, the mother consistently tested positive for oxycodone for months; it is not clear that is "intermittent" or "occasional" substance abuse. And second, the consistent use occurred while she was involved with DHS and the juvenile court and knew that positive drug tests would weigh heavily toward the court's decision whether to terminate her parental rights. "Untreated substance abuse can create an appreciable risk of adjudicatory harm to the" child. *In re J.M.*, No. 18-0163, 2018 WL 1631391, at *2 (Iowa Ct. App. Apr. 4, 2018) (affirming the juvenile court's ruling

---

[6] The mother testified that the service provider's sworn testimony was all a lie. She shared her own version of the events, which the juvenile court ruled "didn't make sense and wasn't credible." In contrast, the court found the service provider "very credible." We generally defer to the juvenile court's credibility findings. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).

the children could not be returned to an opioid-addicted parent); *In re D.M.*, No. 18-0086, 2018 WL 1433104, at *2 (Iowa Ct. App. Mar. 21, 2018) (concluding the child could not be returned to mother's care because the mother "continues to use opioids, testing positive shortly before the termination hearing"); *see also In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (reiterating that unresolved drug addiction can render a parent unfit to raise their children). We agree with the juvenile court that S.F. could not be returned to the mother's care.

In the alternative, the mother requests additional time. The court can delay permanency if it determines the needs for removal "will no longer exist" at the end of six months. Iowa Code § 232.104(2)(b); *see also id.* § 232.117(5). The mother says she should get more time to work toward reunification, but she does not explain how that time will improve her situation. When prompted by the court, the mother was able to say she is an addict, but we understand her statement to be in reference to her former use of methamphetamine. The mother has repeatedly justified her use of the prescription pain medication as within the direction of doctor and for a legitimate pain in her mouth. She repeated as much in a substance-abuse evaluation she completed after the first day of the termination hearing. And the mother offered no explanation for her positive test in January 2021, suggesting it was in error and "coincidental" that it was positive for the same substance as her other recent tests. In these circumstances, we cannot see how the need for removal would be remedied in six months.

Finally, the mother argues the court should have decided to not terminate her rights because of the strong bond she and S.F. share and the detriment

termination will cause the child.[7]  *See* Iowa Code § 232.116(3)(c).  The mother and S.F. share a very strong bond.  But S.F. had been out of the mother's care for nearly two years at the last day of the termination hearing, and she was struggling with the ongoing instability and uncertainty related to being involved with the child-welfare proceedings.  A constant, safe home is best for S.F., and the benefit she will receive from that outweighs the disadvantage caused by the termination of the mother's parental rights.  *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

We affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

[7] Additionally, the mother argues the juvenile court "should have given more weight to consideration of the impact on the child by severing" her relationship with her older siblings.  Sibling relationships are not contemplated as a reason not to terminate parental rights in section 232.116(3)(c) and, in any event, S.F.'s siblings are already adults.